*Castle & Withington* for defendant.

---

## TERRITORY OF HAWAII *v.* JAMES L. HOLT.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED SEPTEMBER 21, 1910.          ·       DECIDED SEPTEMBER 29, 1910.

HARTWELL, C.J., PERRY AND·DE BOLT, JJ.

GRAND JURY——*additional jurors*.

> Of a grand jury panel of twenty-three, three jurors had not been summoned, three had been excused by the court for the term and · five others temporarily. Twelve only appearing at a meeting, the court directed the drawing of five additional names from the appropriate jury box to fill the panel. Held, the additional names were validly drawn and an indictment found at a meeting attended by the remaining twelve, the five new members and one of the jurors temporarily excused was valid.

OPINION OF THE COURT BY PERRY, J.

An indictment against the defendant was found by the grand jury on February 16, 1910, and filed in the court on the day following. Subsequently the defendant moved to quash the indictment on the ground, in substance, that the grand jury which found it was illegally constituted. The sole exception before us is to the denial of that motion.

At the time and in the manner provided by law twenty-three grand jurors were drawn to serve during the January, 1910, term of the circuit court of the first circuit. Of these, three

were not served, one or more of them being without the Territory; prior to January 8 three were by the court excused for the term and one other (J. W. Waldron) until March 1, 1910; an eighth juror (C. G. Bockus) was, also prior to January 8, 1910, by the court "excused temporarily—going to coast—to report upon his return." Bockus returned to the Territory "several days" prior to February 16, leaving again for the mainland on February 18. On the morning of February 16, when the motion below mentioned for additional jurors was made, Bockus had not "reported" to the court, F. T. P. Waterhouse was on the Island of Maui, G. C. Potter was engaged in his usual business at one of the local banks, being, with one E. I. Spalding, who was then serving on the federal grand jury, the only person authorized to sign the paper of the bank, and H. P. R. Glade was likewise serving on the federal grand jury, being a member of the regular panel in that court. These three men, all members of the original panel in the circuit court, had been excused by the foreman of the grand jury, Potter and Waterhouse from attendance at the meeting of that day and Glade apparently for the term. Pursuant to prior adjournment a meeting of the grand jury was attempted to be held on the morning of February 16 but only the twelve remaining jurors appeared. Thereupon a deputy of the city and county attorney moved in court that five additional persons be drawn and summoned to serve with the regular panel, accompanying the motion with the following statement: "If the court please, a meeting of the grand jury was called for 9:30 o'clock this morning. At that hour a sufficient number did not appear to constitute a quorum and cannot be obtained. That arises from the fact that a number of jurors have been excused from the panel as originally drawn, and from the fact that some of the jurors are out of the jurisdiction and others serving on the federal grand jury." The motion was granted and five additional grand jurors drawn and sworn. On the afternoon of the same

day a meeting of the grand jury was held attended by the twelve above referred to, the five newly sworn members and Bockus. At the meeting the cases of one Freitas, charged with assault and battery, and of this defendant were considered and an indictment found against each.

The argument for the defendant is that the foreman of the grand jury had no power to excuse Potter, Waterhouse or Glade; that Bockus was easily obtainable as a juror and that therefore the drawing of the additional five jurors was unauthorized and void, and the grand jury which found the indictment was without legal authority to do so.

The statutory provision applicable to the case is found in section 1782 of the Revised Laws, as amended by Act 80 of the Laws of 1907, reading as follows: "Whenever a sufficient number of jurors are not drawn or summoned, or whenever a sufficient number of jurors regularly drawn and summoned, as hereinbefore provided, do not appear or cannot be obtained, to form a grand jury, or a trial jury in any case, civil or criminal, the court may order the sheriff to summon additional grand jurors or talesmen as may be required. Three additional grand jurors and three talesmen for trial jurors may be summoned from among the bystanders, if no objection is made by any party interested. If more than three additional grand jurors, or more than three talesmen for trial jurors should be required, or if objection be made to summoning any bystanders, the court shall then, and thereafter as often as occasion may require, direct that from the appropriate jury box may be drawn names sufficient in number to fill said grand jury panel so that the same may then contain not less than 13 or more than 23 grand jurors, or, if the deficiency be in the trial jury, that from the appropriate jury box may be drawn not more than 26 in number for the purpose of filling the panel and acting as trial jurors for the residue of the term; whereupon the court shall direct the sheriff to summon the persons whose names have

been thus drawn to appear forthwith for the purposes aforesaid."
The number of grand jurors in each circuit "shall be not less
than thirteen nor more than twenty-three." See Organic Act,
Sec. 83, and Rule 4 of the Supreme Court relating to Grand
Juries.

It is unnecessary to decide whether the words in Sec. 1782
"a sufficient number" refer to the minimum of thirteen or to a
larger number deemed by the trial court essential to a practical
working body of grand jurors, for assuming that they refer to
the minimum still it is clear that a sufficient number did "not
appear" at the morning session of February 16. Twelve only
were present. If the word "or" connecting the words "do not
appear" with the words "cannot be obtained" is to be read in
its ordinary signification, the mere failure of more than twelve
to appear was sufficient to justify the court in ordering the ad-
ditional five to be summoned. The defendant contends, how-
ever, that this "or" should be read as "and," the argument be-
ing that otherwise the phrase "cannot be obtained" would have
no meaning. Passing by the possible objection that under the
defendant's construction the words "do not appear" become
superfluous and assuming that the construction is correct, still
the order was authorized. Not more than twelve jurors could
be obtained. It is undisputed that three had not been served
and that four had been validly excused by the court. Bockus
had not yet reported for duty. The leave of absence which the
court had granted him was to extend until he should report and
the court by its inaction had acquiesced in his failure to appear,
and this it might properly do for it might well have been satis-
fied that for business or other reasons Bockus should be excused
from attendance until the expiration of a few days after his
return to the Territory. He was still on a valid leave of ab-
sence when the order was made. The court certainly had
knowledge of the non-service on the three jurors and of the fact
that it had itself excused five. Assuming that it did not know

of the reasons for the excuse of Waterhouse, Potter and Glade it at least, by its ruling granting the motion, ratified the action, whatever it had been, of the foreman in excusing them. It accepted the statement of the prosecuting officer as correct, and ratifying the excuse, ordered five additional jurors summoned. But there is nothing in the record to show that the court did not know why these three men were not in attendance. It is common procedure in trial courts for the presiding judge to be privately informed in such matters of the course of events and then to have the mere summary of the necessity for the action stated in open court in support of such a motion. The presumption is that the drawing was valid and that the facts existed making it valid and were known to the court, and therefore that the three jurors were excused by the court. "In the absence of any showing on the record upon the subject the court will, when it is necessary to do so, presume that the grand juror was excused." 17 Ency. 1275. See also *Wallis* v. *State*, 54 Ark. 611 (16 S. W. 821, 822), and *Blevins* v. *State*, 68 Ala. 92, 94. "Courts do not look with indulgence upon objections to irregularities in selecting or drawing grand jurors committed without fraud or design and which have not resulted in placing upon the panel disqualified jurors." 20 Cyc. 1306-7. There is no contention that any of the five additional jurors was disqualified. It may be added that a juror who has been excused from service, even though temporarily only, "cannot be obtained," within the meaning of Sec. 1782, to aid in forming a grand jury. In this case, even including Waldron, Bockus, Potter, Waterhouse and Glade and the five new members, the maximum of twenty-three was not exceeded.

It is also claimed for the defendant that it is extremely doubtful whether an additional venire can be summoned without first exhausting the remedy of summoning three bystanders, provided no objection is made. It seems to us clear that when, as in this instance, more than three additional grand jurors are

Territory v. Holt, 20 Haw. 240.

required the summoning of bystanders is not a prerequisite. Sec. 1782 so provides expressly.

The other questions argued need not be considered.

The exception is overruled.

*J. W. Cathcart, City and County Attorney,* and *F. W. Milverton, Deputy City and County Attorney,* for the Territory.

*Kinney, Ballou, Prosser & Anderson,* and *A. S. Humphreys,* for defendant.