296 So.2d 779

**STATE of Alabama ex rel. William J. BAXLEY, Attorney General**

**v.**

**Honorable Cecil H. STRAWBRIDGE, Circuit Judge.**

**6 Div. 713.**

Court of Criminal Appeals of Alabama.

April 30, 1974.

Rehearing Denied May 21, 1974.

William J. Baxley, Atty. Gen., Winston T. Lett, Asst. Atty. Gen., and George Beck, Deputy Atty. Gen., Montgomery, for petitioner.

Zeanah, Donald, Lee & Williams, Tuscaloosa, James K. Davis, Hamilton, for respondent.

CATES, Presiding Judge.

Original action by the Attorney General asking this court, in its supervisory capacity, to hold for naught certain orders of the Circuit Court of Lamar County, Hon. Cecil H. Strawbridge presiding. The orders in question quashed some fifteen indictments. Our supervisory power derives from § 6.-03(d) of the Judicial Article, Amendment No. 328, to the Constitution of 1901. We consider that this action falls within that provision.

The trial judge (respondent herein) granted motions to quash the indictments because a tape recorder was being used by the District Attorney in the sessions of the grand jury of Lamar County at which sworn witnesses testified viva voce.

The salient feature of grand jury procedure is secrecy. A grand jury may investigate, but in the absence of a statute it may not compile records. In Ex parte Burns, 261 Ala. 217, 73 So.2d 912, it was held that a person criticized (but not indicted) was entitled to have a so-called grand jury report expunged. The grand jury either indicts, recommends impeachment, or does nothing of record, i. e., puts up or shuts up.

Perhaps this was not always so in Plantagenet England when the Norman Kings were installing their version of feudalism, making all freemen oath bound to the Sovereign as well as to lords from whom the subjects held land. However, by the time of the settlement of America the English Grand Jury was essentially the body we know today.

Holdsworth, History of English Law I: 322–323 says in part:

"The presentments made by the grand jury do not and never did amount to an assertion that the person presented is guilty. They are merely an assertion that he is suspected. * * *"

"The grand jury of modern times still retains some traces of antiquity which have been lost to the other varieties of the jury. They consider the evidence in secret, but the court does not control or advise them as to their findings in the individual cases which comes before them. It merely charges them generally as to the nature of the business which they are about to consider. They can always act if they please on their own knowledge; and Holt tells us that they often so acted at the end of the seventeenth century. They can act at the present day [1927] in much the same way as they acted in the thirteenth century."

Parenthetically, England in 1933 altered the accusatory process to require the judgment of three stipendiary magistrates for the issuance of an indictment.

Stephens Comm. (19th ed., 1928) Vol. IV, p. 204 says:

" * * * The function of the grand jury is to inquire whether there is a *prima facie* case made by the prosecution against the accused. They therefore hear only the evidence of the prosecution and not that of the defence. They are assembled, not to 'try' the case, but to decide whether such a trial is necessary."

■ The proceedings of a grand jury—in Alabama—are ex parte. That is, the State alone is given the occasion of making out a prima facie case that the accused should be brought before a petty jury where the State would have the opportunity to try to prove him guilty beyond a reasonable doubt.

Secrecy attends this proceeding: the indictment is held sub rosa until the Sheriff has arrested the accused thereon. Code 1940, T. 15, § 252. The grand jurors take oath to keep secret the "counsel" of the State and of themselves. T. 30, §§ 73 and 74.

■ But for impeachment of a witness, or perjury, a grand juror may be required to disclose the testimony of any witness examined by that body. Whether these two enumerations of compellable testimony in Code 1940, T. 30, § 87, exclude all else we need not here decide. Gore, v. State 217 Ala. 68, 114 So. 794, seems to so imply.

■ Under the Constitution 1901, § 8 (as amended by Amendment 37) requires, except on a plea of guilty before indictment, that all prosecutions (except those under military law) for felonies *must* begin with an indictment. This by necessary implication makes mandatory that there can be no felony prosecution without an accusatory bill of a grand jury. Kennedy v. State, 39 Ala.App. 676, 107 So.2d 913.

For the next sitting of the circuit court, if a grand jury is needed, any of one of the judges in open court shall draw the names of persons sufficient to make up a venire for the sheriff to summon. Code 1944, T. 30, §§ 30 and 31.

On the assemblage the judge shall first ascertain that each juror possesses the qualifications required by law. The first eighteen (not excused) to be then drawn from the venire become the grand jury. T. 30, § 38; Wyatt v. State, 36 Ala.App. 125, 57 So.2d 350, relying on Patterson v. State, 171 Ala. 2, 54 So. 696.

Each county minimally must have two grand juries a year. Counties having over 50,000 population must have a minimum of four grand juries per annum, T. 30, § 38. Some circuit judges consider it advisable to have the grand jury periodically recess to a day certain so that dispatch in formally accusing and trying is facilitated. See T. 30, § 72 as to reassemblage. For a discussion of recessing, adjourning or discharging a grand jury, see Petty v. State 224 Ala. 451, 140 So. 585.

After selection, the foreman is the first to be sworn. T. 30, § 73. The other grand jurors take oath by reference to that taken by their foreman. T. 30, § 74. The substance of the oath is:

" * * * 'You * * * do solemnly swear (or affirm as the case may be), that you will diligently inquire, and true presentment make, of all indictable offenses given you in charge, as well as those brought to your knowledge, committed or triable within the county; the state's counsel, your fellows' and your own, you shall keep secret; you shall present no person from envy, hatred, or malice, nor leave any one unpresented from fear, affection, reward, or the hope thereof; but you shall present all things truly as they come to your knowledge, to the best of your understanding. So help you God.' "

The cognizant circuit judge then charges them under T. 30, § 75, which reads:

"The judges of the several courts in this state in which grand juries are organized and empaneled shall give in special charge to the grand jury relative to the criminal laws of this state against the following offenses: Laws regulating the use of automobiles, carrying concealed weapons, dealing in county claims by county officers, failure of tax assessor to administer oath to taxpayer, forming pools to regulate quantity or price of products, combination to control corporation with such intent, violations of election laws, laws relating to convicts and prisoners, adulterating, and selling candies, gaming, selling liquors in violation of law, betting on any election, violating the game and fish law, anti-free pass law, or violating the law prohibiting corporations from contributing to campaign funds; it shall likewise be the duty of the judge to charge the grand jury as to all other matters which may be required by law, and to instruct the grand juries that it is their duty to indict for the above named offenses, if, in

the opinion of the grand jury, the evidence justifies the indictment."

Also, the grand jury—as the Grand Inquest—looks into the condition and conduct of the county (but not a city or town) jail with power to indict any derelict county commissioners. T. 30, § 76. Under § 77 they are duty bound to examine the county treasury, the correctness and sufficiency of the bond of each county officer; to inquire into all indictable offenses not barred by the statute of limitations or other law.

Under § 78 of the same title they check out the Sheriff's accounts with the State for feeding prisoners. The holding of county court is to be looked into under § 79, supra, as are the fee books of the Probate Judge and the books and papers of the county superintendent of education. §§ 80 and 81.

The grand jury have free access to the jail and to all county offices in connection with their duties. § 82. They have the power to command the attendance of witnesses by subpoena and on default may cite the defaulting witness. § 83. Additionally, the District Attorney may subpoena witnesses to give evidence before the grand jury. § 84. Either the District Attorney or the foreman administers the oath to a witness. § 85.

To ensure propriety, Title 30, § 86 provides:

"In the investigation of a charge for any indictable offense, the grand jury can receive no other evidence than is given by witnesses before them, or furnished by legal documentary evidence; and any witness may be examined and compelled to testify as to any offense within his knowledge, without being specially interrogated as to any particular person, time, or place."

Much as they might be tempted to do so, a grand jury may not indict merely on their own suspicious: they must have

sworn witnesses or self-proving documents before them. Code 1940, T. 30, § 86.

The generality of this rule may be modified, or relaxed, in particular crimes to require more onerous proof to be laid before the grand jury, for example, as the requirement of corroboration in the case of seduction. Code 1940, T. 14, § 419; Allen v. State, 162 Ala. 74, 50 So. 279. This exception is not before us.

■ However, we have recognized as a general rule that an indictment may rest on hearsay because hearsay which comes from the mouth of a sworn witness, without objection, becomes legal evidence. See discussion in Douglas v. State, 42 Ala.App. 314, 163 So.2d 477. Pitts v. State, 52 Ala. App. ——, —— So.2d ——, (1974); Washington v. State. 63 Ala. 189; Anno. 37 A. L.R.3d 612.

We do not believe our cases have decided the effect of T. 30, § 86, where there is a single witness but that witness is legally incompetent. Anno. 39 A.L.R.3d 1064.

Walker v. State, 17 Ala.App. 555, 86 So. 257, being in conflict with *Washington,* supra, was overruled in *Douglas,* supra. ·*Pitts,* supra, is the latest expression of our adherence to rule in Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L. Ed. 397. See Younger, Case Note, 9 Ala. Law Rev. 92.

"For the stenographer in the instant case to testify from his notes as to the testimony of the witnesses before the grand jury could only tend to the establishment, vel non; of the sufficiency of the evidence and would transcend the rule established by the foregoing authorities.

"We are therefore of the opinion reversible error cannot be rested upon this ruling of the court, and that the holding of the Court of Appeals upon this point is erroneous."

—Ex parte State ex rel. Attorney General

Gore v. State, supra

T. 62 of the 1940 Code, § 365, as amended, authorizes in the 10th Judicial Circuit —Jefferson County—the employment of "all shorthand reporters necessary to properly report the proceedings before the grand jury and transcribe the same * * *." The reporter referred to in *Gore,* supra, was employed under this section.

The Supreme Court took a more restrictive view than had the Court of Appeals (22 Ala.App. 136, 114 So. 791). Nevertheless, neither court condemned the reporting and transcribing of testimony adduced before the grand jury. See Smith v. State 142 Ala. 14, 39 So. 329.

We fail to see any valid distinction between a process whereunder a reporter takes shorthand notes and transcribes them for the District Attorney and one entailing a direct electronic recording. There may be some problem in using a tape to impeach or prosecute (for perjury) a witness who was before a grand jury. See Kissic v. State, 266 Ala. 71, 94 So.2d 202.

■ However, such difficulties are not so insurmountable as to call for the cassation of fifteen indictments. Ordinarily, without a motion for nol prosequi by the State, a judge should only quash an indictment under Code 1940, T. 15, § 258. At Common Law the prerogative of moving for a discontinuance was with the Attorney General[1] to which our Code (T. 15, § 257) has added the consent of the court.

■ We find no cause for quashal in this case. Admittedly, public policy adjures secrecy: (1) to prevent a culprit es-

---

[1]. Nolle prosequi at Common Law was (and is) the prerogative of the Crown acting solely through the Attorney General to discontinue a prosecution. R. v. Allen, (1862) 1 B. & S. 850. Under Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1, the prosecution cannot be postponed over the valid objection of the defendant.

caping if he hears of there being testimony against him before a grand jury; (2) to protect the good name of those not indicted; and, (3) to keep prosecution witnesses from being harassed or intimidated in order to keep them away from the trial of the indictment before a petty jury.

The use of a tape recorder by the District Attorney does not also impliedly authorize the extraneous use of such tapes. However, as an officer of the court and as a constitutional servant of the State he, the District Attorney, is subject to answer for any unlawful conduct. We have found none in this case nor has any been alleged.

At all events the State is entitled to have these indictments tried.

The peremptory writ of mandamus will issue commanding the respondent to set aside his order and that he restore the indictments of instant concern forthwith to the trial docket.

Peremptory writ awarded.

TYSON, HARRIS and DeCARLO, JJ., concur.

ALMON, J., concurs in result.

## ON REHEARING

CATES, Presiding Judge.

Counsel for respondent presses the pertinency of State v. Revere, 232 La. 184, 94 So.2d 25.

There the trial court had quashed an indictment because an investigator assigned to the district attorney's office had gone into the grand jury proceedings to operate a recording machine. The Supreme Court of Louisiana affirmed, holding that the presence of a monitor or operator had not been authorized by statute. The court followed the minority view set out in 4 A.L. R.2d 392.

This holding is in conflict with Blevins v. State, 68 Ala. 92 (3) where there is strong dictum against the presence of special prosecutors in the grand jury room. See also, King v. State, 208 Ala. 152, 93 So. 855. But in *Blevins*, supra, error was harmless. See Rush v. State, 253 Ala. 537, 45 So.2d 761 (bailiff).

*Gore*, supra, rests on the authority of an express statute authorizing the presence of a stenographer. Here the District Attorney is a person expressly authorized to present evidence to the grand jury. That he uses a machine to preserve his work product and improve his recollection is not to be condemned so long as the recordings are not bruited about.

We do not think even the strictures of *Revere* would apply here because no person unauthorized to be present operated the recorder. We decide no more than this.

The application for rehearing is therefore overruled.

Opinion extended; application overruled.

All the Judges concur.